UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-453-GCM
(3:91-cr-33-GCM-1)

| | | |
|---|---|---|
| LOUIS SAMUELS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate pursuant to 28 U.S.C. § 2255 seeking relief pursuant to <u>Johnson v. United States</u>, 135 S.Ct. 2551 (2015), (Doc. No. 1), appointed counsel's supporting memorandum, (Doc. No. 3), the Government's Motion to Dismiss, (Doc. No. 7), and counsel's reply, (Doc. No. 8). Also pending is Respondent's motion for an extension of time to file the response, (Doc. No. 6), which is now moot. For the reasons that follow, the motion to vacate will be dismissed with prejudice as procedurally defaulted.

**I. BACKGROUND**

Petitioner was charged in the underlying criminal case with three counts of possession of a firearm by a convicted felon and one count of possession of ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(1)(B), 924(e)(1). (3:91-cr-33, Doc. No. 1 at 1). The counts are: Count (1), possession of a silver handgun on or about January 1, 1991; Count (2), possession of a silver handgun on or about January 30, 1991; Count (3), possession of a shotgun on or about February 2, 1991; and Count (4), possession of 12-guage shotgun shells on or about February 13, 1991. (<u>Id.</u>, Doc. No. 13 at 277-78).

1

The Government presented evidence at trial regarding several witnesses' "traumatic encounters" with Petitioner:

> ... First, with respect to count one, Necolle Watts testified that on January 1, 1991, Samuels lured her to a motel room at the Cricket Inn in Charlotte, North Carolina. After she arrived at the motel, Samuels held a silver handgun to her head and threatened her several times, repeatedly forcing her to perform oral sex and once forcing her to ingest drugs. Second, Loretta Ardery testified that on January 30, 1991, Samuels called her and asked for a ride from his room at the Econo Lodge in Charlotte. Ardery testified that she drove to the motel and went to Samuels' room to help him carry his suitcases, when Samuels grabbed her, forced her into the room, and attempted to tie her up while repeatedly pointing a silver handgun at her face. Third, Seymore James, Samuels' uncle, testified that on February 2, 1991, Samuels drove to James' house and asked James to keep his shotgun for him. James took the shotgun and kept it in his house until he turned the weapon over to the police on February 14, 1991. Finally, several Charlotte police officers testified that they found shotgun shells in a dresser drawer at Samuels' residence on February 13, 1991. The officers seized the shotgun shells during a search of Samuels' residence, pursuant to a search warrant issued by a magistrate of the state of North Carolina.

United States v. Samuels, 970 F.2d 1312, 1313 (4th Cir. 1992).

The jury found Petitioner guilty of all counts. (3:91-cr-33, Doc. No. 1 at 3).

The Presentence Investigation Report ("PSR") calculated Petitioner's offense level as 34 under the armed career criminal provision of U.S. Sentencing Guidelines § 4B1.4. (3:91-cr-33, Doc. No. 11). The Government filed objections arguing that, although Petitioner qualified for sentencing as an armed career criminal, he should be sentenced instead as a "career offender" pursuant to Guidelines § 4B1.1, which carries a higher sentencing range. (Id.); Samuels, 970 F.2d at 1313. The Court found that the base offense level for Count (1) is 27, plus a two-level increase for restraining a victim, and a four-level increase for displaying a firearm. (Id., Doc. No. 15 at 29). However, the Court found that a two-level increase for obstruction of justice does not apply, so the total offense level for Count (1) is 33, and the total offense level after accounting for the multiple count adjustment, is 34. (Id., Doc. No. 15 at 35); (Id., Doc. No. 11 at ¶¶ 30-31).

2

The criminal history section scores 12 criminal history points and a criminal history category of V. (Id., Doc. No. 11 at ¶¶ 35-38). The PSR lists the predicate offenses for enhanced sentencing as one conviction for felony riot (85CRS96134), and two convictions for possession with intent to sell and deliver cocaine (86CRS3744 and 86CRS3749). (Id., Doc. No. 11 at ¶¶ 40). The Court agreed with the Government that Petitioner is a career offender, so the offense level is 37 and the criminal history category is VI, with a resulting sentencing range of 360 months to life imprisonment. (Id., Doc. No. 15 at 36, 37, 49). The Court sentenced Petitioner to 540 months' imprisonment followed by five years of supervised release. See (Id., Doc. No. 1 at 4); (Id., Doc. No. 15 at 95-96).

Petitioner argued on direct appeal that the Court erred by: (1) rejecting his motion to sever the four charges; (2) denying his motion to suppress; and (3) improperly enhancing his sentence. The Fourth Circuit affirmed the conviction but reversed the career offender sentence because the underlying felon-in-possession offense is not a "crime of violence" for purposes of the career offender guideline, § 4B1.1. It found, however that Petitioner does qualify as an armed career criminal based on his prior convictions for felony riot and two drug offenses. It remanded for resentencing as an armed career criminal pursuant to Guidelines § 4B1.4, with an offense level of 34 and criminal history category of VI, and an imprisonment range of 262 to 327 months. Samuels, 970 F.2d at 1314.

On remand, the Court relied on the armed career criminal calculation pursuant to the Fourth Circuit's mandate. However, it found that an upward departure was warranted on two independent grounds. It found by a preponderance of the evidence that: (1) the Government established rapes, sexual assaults, and other acts of violence reflecting a "violent propensity of unbelievable magnitude;" and (2) the criminal history "does not consider the extremely,

3

extraordinarily serious nature of the underlying criminal conduct." (3:91-cr-33, Doc. No. 18 at 29-30). It therefore increased the offense level 35 and arrived at a guidelines imprisonment range of 292 to 365 months. (Id., Doc. No. 1 at 5-6). The Court sentenced Petitioner at the top of that range to 365 months' imprisonment. (Id., Doc. No. 18 at 33). The Fourth Circuit affirmed. United States v. Samuels, 14 F.3d 598 (4th Cir. 1994).

Petitioner filed a pro se petition for writ of *audita querela* on August 3, 2009, arguing that he should be resentenced without the armed career criminal enhancement pursuant to United States Sentencing Guidelines Amendment 709. (3:91-cr-33, Doc. No. 2). The Court dismissed the petition as frivolous on January 14, 2010. The Fourth Circuit affirmed on May 4, 2010, finding that the Court did not err by denying the petition because alternative remedies exist. United States v. Samuels, 376 Fed. Appx. 291 (4th Cir. 2010).

Petitioner filed his *pro se* § 2255 motion to vacate on June 20, 2016, arguing that his ACCA sentence is illegal pursuant to Johnson v. United States, 135 S.Ct. 2551 (2015). (Doc. No. 1). Counsel filed a supporting memorandum on Petitioner's behalf arguing that Petitioner's 365-month ACCA sentence exceeds the statutory maximum because Petitioner's prior conviction for North Carolina felony riot is no longer a "violent felony" pursuant to Johnson, that his sentence should be reduced to 120 months, and he should be immediately released. (Doc. No. 3).

The Government filed a Response and Motion to Dismiss arguing that Petitioner's Johnson claim is procedurally defaulted and meritless. That is, Petitioner failed to raise his sentencing argument on direct appeal and his procedural default of the claim is not excused, the claim is meritless because North Carolina felony riot is a "violent felony" under ACCA's use-of-force clause, and that Petitioner's overall sentence was not affected by his classification as an armed career criminal. (Doc. No. 7). Specifically, the Respondent argues that Petitioner's offense

4

characteristics independently yield a total offense level of 34, resulting in a sentencing range of 262 to 327 months' imprisonment before application of the upward departure, and the removal of the ACCA enhancement would not have altered his total term of imprisonment because the non-enhanced statutory maximum of 120 months' imprisonment for each count would have to run consecutively pursuant to Guidelines § 5G1.2(d).

Petitioner filed a reply arguing that felony riot as defined by the North Carolina General Statues, rather than the common law upon which the Government's response relied, is not a "violent felony" because it addresses acts of violence towards persons *or property*. Petitioner's total sentence was affected by the ACCA error because stacking the sentences for the four felon-in-possession counts consecutively would violate double jeopardy as the jury did not find that the firearms and ammunition were stored or acquired separately for each count. (Doc. No. 8). Thus, the total sentence should have been 120 months. Alternatively, stacking Counts (1) and (2) would violate double jeopardy because they both charged possession of a single silver handgun and the Government did not prove that the possession was not continuous, which would make the maximum total sentence 360 months. Petitioner contends that he can establish cause and actual prejudice to excuse his procedural default of this claim because Johnson decided a novel constitutional issue which affected his sentence.

II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Rule 4(b) of the Rules Governing Section

5

2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. PROCEDURAL DEFAULT

As a general matter, a petitioner cannot raise an argument in a post-conviction proceeding that he did not raise earlier on direct appeal. See, e.g., Sanchez-Llamas v. Oregon, 548 U.S. 331, 351 (2006) (citing Massaro v. United States, 538 U.S. 500, 504 (2003), and Bousley v. United States, 523 U.S. 614, 621 (1998)). Courts may excuse procedural default where a defendant is able to demonstrate "cause" and actual "prejudice," or actual innocence. Bousley, 523 U.S. at 622 (citing Murray v. Carrier, 477 U.S. 478, 485 (1986), and Wainwright v. Sykes, 433 U.S. 72, 87 (1977)).

"Cause" to excuse a procedural default requires "some objective factor external to the defense [that] impeded counsel's efforts to comply" with the procedural requirements to raise a claim. Murray, 477 U.S. at 488; United States v. Mikalajunas, 186 F.3d 490 (4th Cir. 1999). For instance, "cause" is established "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel." Reed v. Ross, 468 U.S. 1, 16 (1984). To show prejudice, a petitioner must show that, without an error, the conviction or sentence would have been different. Strickler v. Green, 527 U.S. 263, 289 (1999).

With regards to prejudice, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (2001). "In most cases a defendant

who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome." Molina-Martinez v. United States, 136 S. Ct. 1338, 1346 (2016). However, "[t]he record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range. Judges may find that some cases merit a detailed explanation of the reasons the selected sentence is appropriate. And that explanation could make it clear that the judge based the sentence he or she selected on factors independent of the Guidelines." Id. at 1346–47.

## IV. DISCUSSION

Petitioner contends that his sentence as an armed career criminal is illegal pursuant to Johnson v. United States, 135 S.Ct. 2551 (2015). The Armed Career Criminal Act ("ACCA") defines a "violent felony" as any felony that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C.A. § 924(e)(2)(B) (emphasis added).

Subsection (e)(2)(B)(i) is commonly referred to as the use-of-force clause which applies only to those crimes that involve "*violent* force—that is, force capable of causing physical pain or injury to another person." See Johnson v. United States, 559 U.S. 133, 140 (2010). To determine if a prior conviction constitutes a violent felony under the use-of-force clause, courts typically use a "categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." United States v. Brandon, 247 F.3d 186, 188 (4th Cir. 2001) (quoting Taylor v. United States, 495 U.S. 575, 600 (1990)).

In a "narrow range of cases," however, a "state statute can be violated in several ways," some of which would fall within the definition of a "crime of violence," and some of which would not. Id. When a prior conviction is for violating such a "divisible statute"—one that sets out one or more of the elements in the alternative—courts use a "modified categorical approach" as a tool to identify the crime of conviction from among several alternatives. Descamps v. United States, 133 S. Ct. 2276, 2279 (2013); United States v. Alston, 611 F.3d 219, 224 (4th Cir. 2010). A crime is "divisible" when it includes multiple "alternative elements" that create different versions of the crime, at least one of which would qualify under the federal definition and at least one of which would not. United States v. Gardner, 823 F.3d 793, 802 (4th Cir. 2016) (citing Descamps, 133 S.Ct. at 2283-85). A crime is not divisible simply because it may be accomplished through alternative means, but rather, when alternative elements create distinct crimes. Omargharib v. Holder, 775 F.3d 192, 197-98 (4th Cir. 2014). Alternative elements of a crime, as opposed to alternative means of committing it, are "factual circumstances of the offense that the jury must find unanimously and beyond a reasonable doubt. Id.; see United States v. Royal, 731 F.3d 333, 341 (4th Cir. 2013) (when determining a crime's divisibility, a court may consider how juries are generally instructed with respect to the offense."). In using this approach, courts may only rely on documents with "the conclusive significance of a prior judicial record," such as charging papers, written plea agreements, plea colloquy transcript, and jury instructions. See Shepard v. United States, 544 U.S. 13, 20 (2005).

The first portion of subsection (e)(2)(B)(ii) is referred to as the enumerated offenses clause, and the italicized portion is the so-called "residual clause." The United States Supreme Court announced in Johnson that the ACCA residual clause is void for vagueness. That holding is a retroactively applicable right. Welch v. United States, 136 S.Ct. 1257, 1265 (2016). Johnson

8

addresses only ACCA's residual clause and "does not call into question application of the Act to the four enumerated offenses, or to the remainder of the Act's definition of a violent felony." Johnson, 135 S.Ct. at 2563; see United States v. Hemingway, 734 F.3d 323, 327 (4th Cir. 2013).

Petitioner correctly argues that Johnson's holding is so novel that it was not reasonably available to counsel on direct appeal. See United States v. Redrick, 841 F.3d 478, 480 (D.C. Cir. 2016) ("it is fair to say that no one – the government, the judge, or the [defendant] – could reasonably have anticipated Johnson"); United States v. Snyder, 2017 WL 4171886 (10th Cir. Sept. 21, 2017) (concluding that a Johnson claim was not reasonably available to the § 2255 petitioner at the time of his direct appeal, which is sufficient to establish cause).

Petitioner has also demonstrated that he no longer qualifies for ACCA sentencing after Johnson. The ACCA predicate at issue is North Carolina felony riot pursuant to North Carolina General Statutes § 14-288.2(c). The North Carolina General Statutes define "riot" as "a public disturbance involving an assemblage of three or more persons which by disorderly and violent conduct, or the imminent threat of disorderly and violent conduct, results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property." N.C. Gen. Stat. § 14-288.2(a). Section 14-288.2(c), under which Petitioner was convicted, describes several means of committing riot. (Doc. No. 8-1). A person who willfully engages in a riot is guilty of a Class H felony, if "(1) [i]n the course and as a result of the riot there is property damage in excess of fifteen hundred dollars ($1,500) or serious bodily injury; or (2) [s]uch participant in the riot has in his possession any dangerous weapon or substance." N.C. Gen. Stat. § 14-288.2(c). The statutory language and standard jury instructions suggest that injury, damage, or imminent threat to "persons or property" describe means, and not elements, of

committing riot. See N.C. Gen. Stat. § 14-288.2(a); N.C.P.I. Crim. §§ 236A.10, 236A.15. Therefore, the statute is indivisible and the formal categorical approach applies.

Applying the categorical approach, North Carolina felony riot is not a "violent felony" under ACCA's use-of-force clause. The felony riot statute encompasses the use or threat of violent force against persons *or property* resulting in serious bodily injury *or property damage*. The offense thus fails to "require that an offender use, attempt to use, or threaten to use force *against another person*." United States v. Parral-Dominguez, 794 F.3d 440, 445 (4th Cir. 2015) (finding that the offense of discharging a firearm into an occupied building does not require the use or attempted use of force against a person and does not qualify as a "crime of violence" for purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii)). The Court therefore agrees with Petitioner that North Carolina felony riot is not a "violent felony" under ACCA's use-of-force clause, and cannot rely on the residual clause which Johnson declared to be unconstitutionally vague.[1] Therefore he has, at most, two predicate offenses and does not qualify for sentencing as an armed career criminal.

The removal of an ACCA enhancement generally results in prejudice to the defendant because it changes the guideline range, and thus, the defendant's sentence. See generally Molina-Martinez, 136 S. Ct. at 1346. The record in the instant case, however, demonstrates that the ACCA enhancement did not affect Petitioner's sentence.

Without the ACCA enhancement, Petitioner's offense level was 34 and his criminal history category was V resulting in a guidelines range of 235 to 293 months' imprisonment. On resentencing, the Court relied on an ACCA offense level of 34, criminal history category of VI, and sentencing range of 262 to 327 months' imprisonment, but still felt that an upward departure was warranted. It therefore raised the offense level to 35 and, believing that the maximum

---

[1] The Government does not argue that felony riot is an enumerated offense.

10

criminal history category of VI already applied, left the criminal history category unchanged. The upward departure resulted in a guideline range of 292 to 365 months' imprisonment, and the Court sentenced Petitioner at the top of this range to 365 months' imprisonment. The record is clear that the Court would have imposed the same upward departure sentence of 365 months' imprisonment absent the ACCA enhancement. This sentence does not exceed the statutory maximum for the offenses – 120 months for each count – when the four counts are run consecutively, U.S.S.G. § 5G1.2(d).

Petitioner's contention that consecutive sentences for the four felon-in-possession counts would violate double jeopardy, is meritless.

Section 922(g) makes it unlawful for any person who, *inter alia*, "has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year… to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). The "simultaneous possession of multiple firearms generally constitutes only" one violation of § 922(g). United States v. Dunford, 148 F.3d 385, 390 (4th Cir. 1998) (quoting United States v. Hutching, 75 F.3d 1453, 1459 (10th Cir. 1996)). "In other words, a defendant violates § 922(g) *once* when he possesses at *one* time and place 'any firearm or ammunition,' 18 U.S.C. § 922(g); it does not matter if he has one, two, three, or more firearms." United States v. Robinson, 855 F.3d 265, 270 (4th Cir. 2017). However, "[a] defendant who possesses firearms or ammunition at different times or places, … commits multiple violations of § 922(g)." Id. (citing United States v. Goodine, 400 F.3d 202, 208 (4th Cir. 2005)); United States v. Oliver, 208 F.3d 211 (4th Cir. 2000) ("separate firearm possession offenses exist if the firearms were acquired, stored, or possessed at different times

11

and places."). Therefore, a defendant is chargeable with two separate offenses if the evidence sufficiently shows his disparate course of dealing with two weapons addressing possession of a firearm by a convicted felon. United States v. Mullins, 698 F.2d 686, 688 (4th Cir. 1983) (addressing felon-in-possession under § 922(g)'s predecessor statute, 18 U.S.C.App. § 1202(a)).

In the instant case, the four felon-in-possession counts address incidents involving at least two different firearms (a silver handgun and a shotgun), as well as shotgun ammunition, that were used in four separate incidents on January 1, 1991, January 30, 1991, February 2, 1991, and February 13, 1991. Although Counts (1) and (2) both address a silver handgun, the Government proved that Petitioner used the handgun to threaten different victims during separate incidents nearly a month apart. The evidence was sufficient to prove four separate possessions in support of all four counts under these circumstances. See, e.g., Mullins, 698 F.2d 686 (sustaining multiple felon-in-possession convictions because, although two weapons were seized at the same time, there was substantial evidence that his possessions of them were separate in use; one was kept at an illegal liquor establishment and the other was kept in the handbag of defendant's wife for visits to a second establishment, and was returned to defendant after each trip); Goodine, 400 F.3d 208 (holding that double jeopardy did not bar the defendant's prosecution for possession of a firearm recovered from a garbage can at a home, where a jury had already acquitted him of possession of a bullet recovered from his pocket at jail, because the two temporally distinct possessions did not constitute the same offense); Oliver, 208 F.3d 211 (rejecting defendant's argument that double jeopardy barred multiple convictions for felon-in-possession for firearms seized from his home at the same time, because the record was replete with evidence that he acquired and stored the firearms in question at different times and places).

Double jeopardy does not prevent the four felon-in-possession sentences from being run consecutively in the instant case because each offense was based on a separate independent incident. Therefore, Petitioner has failed to demonstrate that the ACCA enhancement prejudiced him. [2]

Although Petitioner has demonstrated "cause," to excuse his procedural default of this claim via Johnson, he has failed to prove that "actual prejudice" resulted from the ACCA sentencing enhancement. Therefore, this claim is procedurally defaulted from § 2255 review and no exception applies.

### V. CONCLUSION

For the reasons stated herein, the Court dismissed Petitioner's motion to vacate with prejudice as procedurally defaulted.

**IT IS, HEREBY, ORDERED that**:

(1) Petitioner's Motion to Vacate, (Doc. No. 1), is **DISMISSED** with prejudice.

(2) Respondent's motion for an extension of time to file a response, (Doc. No. 6), is **DENIED** as moot.

(3) Respondent's motion to dismiss the motion to vacate, (Doc. No. 7), is **GRANTED**.

Signed: October 13, 2017

Graham C. Mullen
United States District Judge

---

[2] Petitioner does not argue that any collateral consequences from the ACCA enhancement have caused actual prejudice. Nor does he argue that the actual innocence exception applies.

13